SO ORDERED.

SIGNED this 21 day of February, 2008.



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| HAROLD EUGENE WEST and | ) | |
| DONNA MARIE WEST | ) | Case No. 05-43566 |
| | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |
| DARCY D. WILLIAMSON, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-7039 |
| | ) | |
| JANICE PEARSON WHITEMAN, | ) | |
| an individual, JOHNNY RAY | ) | |
| PEARSON, an individual, and | ) | |
| JOHNNY RAE PEARSON and | ) | |
| DONNA MARIE WEST, Co-Executors | ) | |
| of the Estate of Winnie Faye Pearson | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AS TO DEFENDANT, JANICE PEARSON WHITEMAN

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff, Chapter 7 Trustee Darcy D. Williamson ("Trustee"), against Defendant, Janice Pearson Whiteman.[1] The Trustee seeks a determination that Ms. Whiteman alienated or embezzled property from the estate of her deceased mother resulting in an offset against any inheritance she may be entitled to receive from the decedent's estate, and further that Ms. Whiteman owed the estate additional sums of money that should also be offset against any inheritance Ms. Whiteman may be entitled to receive. Ms. Whiteman failed to respond to the summary judgment motion. However, upon reviewing the record submitted in support of the Trustee's motion, the Court finds that summary judgment is not appropriate and, therefore, must be denied.

The Court has jurisdiction to decide this matter,[2] and it is a core proceeding.[3]

## I. FINDINGS OF FACT

The following findings of fact are based upon the Statement of Uncontroverted Facts set forth in the Trustee's Motion for Summary Judgment and, when properly supported by the record, have been deemed admitted for purposes of this motion due to Ms. Whiteman's failure to respond. On January 18, 2001, Winnie Faye Pearson ("Winnie" or "decedent") died in the County of Natrona, State of Washington. Winnie was the mother of the three Defendants, Donna West, Johnny Ray Pearson, and Janice Whiteman. Winnie died at Ms. Whiteman's apartment while under her supervision.

---

[1] Doc. 78.

[2] 28 U.S.C. § 1334.

[3] 28 U.S.C. § 157(b)(2)(O).

Winnie died testate, and on June 1, 2001, a copy of her will was attached to the Petition For Letters of Administration for Probate of Will filed in the District Court, Seventh Judicial District, County of Natrona, State of Wyoming. The heirs at law and the beneficiaries under the will are the Defendants.[4] On June 4, 2001, an Order Admitting Will To Probate and Appointing Coexecutors (Defendant Johnny Pearson and Debtor/Defendant Donna West) was filed in the state court. On June 26, 2001, Letters Testamentary and Oaths of Executors were filed in the state court, whereby Mr. Pearson and Ms. West were appointed Co-Executors.

Over five years later, on October 5, 2005, Ms. West, along with her husband Harold Eugene West, filed for bankruptcy protection in the United States Bankruptcy Court for the District of Kansas. Debtors properly disclosed the existence of the probate estate in their Statement of Financial Affairs and further disclosed the property interest in an inheritance from that estate on Schedule B. Any interest Ms. West had in the property of Winnie Pearson's estate is property of the instant bankruptcy estate pursuant to 11 U.S.C. § 541.

On June 2, 2006, the Trustee initiated this adversary proceeding by filing a Complaint seeking authorization to sell certain real property owned by Winnie at the time of her death. On August 24, 2006, the Trustee filed an Amended Complaint.[5] The Amended Complaint also sought to either disallow or avoid any claims Ms. Whiteman might have to Winnie's estate as a result of a disclaimer Ms. Whiteman had signed.[6]

---

[4]On May 31, 2002, Ms. Whiteman signed a disclaimer of any inheritance from her mother's estate, and that disclaimer was filed with the probate court on December 6, 2002. The Trustee now concedes that the disclaimer is unenforceable, as it was not timely filed, and has apparently abandoned any attempt to enforce that disclaimer.

[5]Doc. 26.

[6]The Trustee has raised other claims against different parties in her Amended Complaint (Doc. 26), but this motion relates only to claims against Ms. Whiteman.

3

On or about June 1, 2007, during this litigation, Defendant Pearson served on Ms. Whiteman a series of requests for admission pursuant to Fed. R. Civ. P. 36.[7] Included in that discovery request were the following requests for admission (numbered according to their original numbers in the discovery request):

    2.    That the attached copies of Receipt Nos. 01454, 01453, and 01453 (sic), marked Exhibit "B" are evidence of payments made by Chad Pearson on account of a loan obtained by Janice Whiteman for approximately $5,000.00 on or about August 12, 1994, for the purpose of purchasing for Chad Pearson, a minor at the time, an automobile.

    3.    Before or after Winnie Pearson's death, Janice Whiteman took possession of Winnie Pearson's check book and credit cards.

    4.    Before or after the death of Winnie Pearson, Janice Whiteman caused to be issued from Winnie Pearson's personal checking account a check payable to Chad Pearson in the amount of $450.00.

    5.    Before or after the Death of Winnie Pearson, Janice Whiteman caused to be issued from Winnie Pearson's personal checking account a check payable to Casper Hardware for $55.28.

    6.    Before or after the death of Winnie Pearson, Janice Whiteman caused to be issued from Winnie Pearson's personal checking account a check payable to Walden's Books for $40.90.

    7.    The checks referenced in Requests 4, 5, and 6 above, were issued and delivered to pay personal expenses of Janice Whiteman and/or Chad Pearson.

    8.    That Winnie Pearson had a Beanie Baby collection reasonably worth over $5,000.00 at or just prior to her death.

    9.    That before or after the death of Winnie Pearson, Janice Whiteman took possession of Winnie Pearson's Beanie Baby collection.

    10.    The invoice from Tiger Direct.com, Exhibit "C," evidences purchase by Janice Pearson a/k/a Janice Whiteman of a Compaq computer monitor, Acer printer/scanner, and miscellaneous software for $2,221.21.

---

[7]Exhibit 7 to the Trustee's Motion for Summary Judgment (Doc. 78). Fed. R. Civ. P. 36 is made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7036.

4

11. The purchase of the computer and related items identified in Exhibit "C," were purchased by Janice Whiteman on or about January 22, 2001, [four] days after Winnie Pearson's death.

12. That Janice Whiteman utilized Winnie Pearson's AT&T Universal Bank, NA, credit card account to purchase the computer and related items identified in Item 10, above.

13. Janice Whiteman purchased the computer and related items identified in Item 10, above, for her personal use or the use of someone other than Winnie Pearson.

Ms. Whiteman did not respond to the above requests for admission, and they are therefore deemed admitted for purposes of this action pursuant to Fed. R. Civ. P. 36(b).

The Trustee filed a motion for partial summary judgment on January 14, 2008, alleging that under Wyoming law, any claim Ms. Whiteman may have in Winnie's estate should be offset by property she improperly took from that estate. According to the Trustee, Ms. Whiteman is liable to the probate estate in an amount equal to twice the value of the property she allegedly took between the date Winnie died and the date the letters testamentary were filed and an executor for Winnie's estate was appointed.[8] Specifically, the Trustee claims that Ms. Whiteman:

1. Took possession of a Beanie Baby collection valued at approximately $5,000;

---

[8] The Court recognizes that typically, actions like this one would be handled by the applicable probate court. This Court would have strongly preferred that course. However, the parties notified this Court that the probate proceeding had been sitting idle for over five years with little, if anything, being done to pay valid claims and distribute the remaining assets to the beneficiaries. The Trustee argued that this inaction by the Wyoming probate court could cause the major asset of this bankruptcy estate, Ms. West's one-third interest in the decedent's estate, to diminish in value, because, in part, the major asset of the decedent's estate was the decedent's home, which had not been sold during the five years the probate estate was open. The Trustee further alleged that Defendant Pearson was improperly living in that home, in violation of his fiduciary duty as a co-Executor to liquidate the asset for the benefit of creditors and heirs. The Trustee also argued that if this Court did not allow this proceeding to be litigated in this Court, the administration of the bankruptcy estate would be unduly delayed. With notice to all counsel, this judge contacted the Wyoming probate court judge to determine if the probate proceeding was being prosecuted, and whether it was likely to be concluded any time soon. The Wyoming judge indicated the case was in an inactive status, that he did not intend to change that status, and would not be reviewing it for upwards of six months or more. Therefore, in an effort to advance the administration of the bankruptcy estate—which cannot be fully administered until these probate issues are resolved—the Court has, with the consent of the parties involved, agreed to resolve the issues related to the probate proceeding here. The probate estate consisted of one major asset, a piece of real property, which the Trustee has now sold with the Court's permission. With the proceeds from that sale, the Trustee paid all claims made on the decedent's estate, and is now attempting to determine what amount, if any, each of the beneficiaries to the will should receive from the probate estate so that the bankruptcy estate can be fully administered, claims paid, and the case closed.

5

2. Purchased a computer for $2,221.21 for her own use using Winnie's credit card;

3. Wrote a check out of Winnie's account to her son, Chad Pearson, in the amount of $450.00;

4. Wrote a check out of Winnie's account to Casper Hardware in the amount of $55.28 that was for Ms. Whiteman's own benefit; and

5. Wrote a check out of Winnie's account to Walden's Books in the amount of $40.90 that was for Ms. Whiteman's own benefit.

In addition to these charges, the Trustee contends that Ms. Whiteman borrowed approximately $5,000 from Winnie, prior to Winnie's death, to purchase a vehicle for Ms. Whiteman's minor son. Although it appears some payments were apparently made on this loan, the Trustee contends that $5,000 is still owed on this debt, and that this amount should also be offset against any claim that Ms. Whiteman may have to Winnie's estate.

Ms. Whiteman failed to respond to the Trustee's partial motion for summary judgment by the February 6, 2008 deadline set by D. Kan. LBR 7056.1(f). On February 7, 2008, the Court sent a letter to Ms. Whiteman informing her that the response was now overdue, and that unless a response was filed within ten days, the Court would consider the motion for summary judgment an uncontested motion pursuant to D. Kan. Rule 7.4 and would rule accordingly. Ms. Whiteman has still not responded to the motion, and the Court now treats the motion as uncontested.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[9] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most

---

[9] Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

favorable to the nonmoving party.[10] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[12]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[13] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[14]

If the movant meets this initial burden, the nonmovant, who would bear the burden of persuasion at trial, may not simply rest upon its pleadings; instead, the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[15] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[16] The court notes

---

[10]*Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[11]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[12]*Id.* (citing *Anderson*, 477 U.S. at 248).

[13]*Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[14]*Id.* (citing *Celotex*, 477 U.S. at 325).

[15]*Id.* (citing Fed. R. Civ. P. 56(e)).

[16]*Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

"A party's failure to respond to a summary judgment motion is not a sufficient basis on which to enter judgment against the party."[18] The Court must still make a determination whether summary judgment is appropriate under Fed. R. Civ. P. 56. "Essentially, the inquiry is whether the facts asserted and supported in the summary judgment motion entitle the moving party to judgment as a matter of law."[19]

## III. ANALYSIS

### A. The motion for summary judgment must be denied, insofar as it is based upon a claim under Wy. Stat. Ann. § 2-7-411, because that claim is not properly before the Court.

The Trustee's motion for summary judgment against Ms. Whiteman seeks a judgment offsetting certain debts against Ms. Whiteman's portion of the decedent's estate based upon allegations that Ms. Whiteman improperly alienated or embezzled property belonging to the decedent's estate following her death, in violation of Wy. Stat. Ann. § 2-7-411. Nothing in the Amended Complaint filed on August 24, 2006, however, makes any mention of either of these two claims. The only claims raised against Ms. Whiteman in the Amended Complaint deal with the disclaimer she filed in the probate actions—which the Trustee now admits in the summary judgment motion was untimely and unenforceable—and a vague, general statement that "any share due Janice Pearson Whiteman is and should be offset against any estate debt she incurred and/or the value of

---

[17]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[18]*See Reynolds v. Delmar Gardens of Lenexa, Inc.*, 2003 WL 192481, *2 (D. Kan. 2003) (citation omitted).

[19]*Id.*

8

any and all property she received."[20] The Trustee makes no allegations in the Amended Complaint that support a claim pursuant to § 2-7-411.

Because this claim was not expressly brought by the Trustee in the Amended Complaint, it does not form a legitimate basis for granting summary judgment.[21] The Court notes that while it is common for additional claims to be added to a final pretrial order when pretrial discovery leads to such claims and the claims have clearly become part of the issues to be tried, the parties in this case have requested several continuances of the deadline to file a final pretrial order pending resolution of a variety of related issues. Thus, there is no final pretrial order in place that could otherwise serve to supercede the pleadings and govern the issues to be litigated at trial.[22] Because the final pretrial conference has not occurred, and no final pretrial order has been entered, the Amended Complaint still controls this proceeding.

**B.   The motion for summary judgment is not supported by the record and, therefore, must be denied on its merits as well.**

In addition to holding that the summary judgment motion must be denied for procedural reasons because the claim based on § 2-7-411 was not properly raised in the Amended Complaint, the Court finds that the record submitted with the motion does not support entry of summary judgment. At issue in this motion is how much, if any, of Ms. Whiteman's share of the decedent's estate should be offset due to property taken by Ms. Whiteman either shortly before, or shortly after, her death. The Trustee relies on Wy. Stat. Ann. § 2-7-411 (2007), which provides:

---

[20] Amended Complaint, ¶ 14 (Doc. 26).

[21] *See Lawmaster v. Ward*, 125 F.3d 1341, 1346 n. 2 (10th Cir. 1997) (refusing to address a claim in a summary judgment motion that was not raised in the complaint).

[22] *Youren v. Tintic School Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003) (holding that a final pretrial order "measures the dimensions of the lawsuit, both in the trial court and on appeal.") (internal quotation marks omitted).

9

> If any person, before the granting of letters embezzles or alienates any of the monies, goods, chattels or effects of a decedent he is chargeable therewith and liable to an action by the personal representative of the estate for double the value of the property embezzled or alienated, for the benefit of the estate.

In order to be subject to the liability imposed by this provision of Wyoming law, "the person who 'alienates' property of an estate must wrongfully transfer the same, acting in that respect from a wrong motive and [bad faith]."[23]

The Trustee contends, relying almost exclusively on the unanswered requests for admissions set forth above, that Ms. Whiteman embezzled or alienated property of Winnie's estate and is liable to the estate for double the value of the property she improperly took, plus the amount of the outstanding loan used to purchase a vehicle for Ms. Whiteman's son. The Trustee claims that the embezzled or alienated property, subject to double damages under § 2-7-411, includes: the Beanie Baby collection, the computer and miscellaneous products related to the computer, the $450 check to Chad Pearson, the $55.28 check to Casper Hardware, and the $40.90 check to Walden's Books. According to the Trustee, these items total $7,767.39 which, when doubled, would make Ms. Whiteman liable for $15,534.78 if the Court finds that each item was embezzled or alienated in violation of § 2-7-411. When the $5,000 remaining balance on the prior loan is added to that total, the Trustee claims that Ms. Whiteman is liable to Winnie's estate in the amount of $20,534.78 and asks that the Court offset that amount against Ms. Whiteman's one-third interest in Winnie's estate.[24]

The Court finds, however, that the record submitted in support of this summary judgment motion does not support the Trustee's position regarding § 2-7-411. By the very terms of that

---

[23] *Delfelder v. Poston*, 293 P. 354, 361 (Wyo. 1930).

[24] The Trustee has reported net proceeds in the $85,000 range from the sale of the decedent's house, after payment of probate claims.

10

statute, which use the phrase "decedent" and "decedent's estate," the alienation or embezzlement of property subject to that provision must occur following the death of the decedent before double damages may be assessed. Therefore, one of the key elements the Trustee must establish to prevail under § 2-7-411 is that the transfers of property took place following Winnie's death. In addition, Wyoming case law interpreting § 2-7-411 makes clear that an essential element for such a claim is that the person must take the property with a "wrong motive and [bad faith]."

   1.   **Beanie Baby Collection**

It has been deemed admitted that Ms. Whiteman took possession of the Beanie Baby collection "[b]efore or after the death of Winnie Pearson." This admission fails to establish a critical element, which is that she took the asset *after* the death. If the collection was taken prior to the date of death, the provisions of § 2-7-411 are completely inapplicable.[25]

Although the motion for summary judgment is uncontested, the Court cannot grant summary judgment when the facts contained in the record clearly do not support the allegations made by the movant. Here, the Court simply cannot look at an admission that states the property was taken "before or after the death" of the decedent, and hold, as a matter of law, that the property was in fact taken after her death. It is simply impossible to determine, based on the record currently before the

---

[25]Although not critical to the resolution of this summary judgment motion, the Court notes that the record, as it stands now, also does not establish that the property was taken improperly. The reason that Ms. Whiteman "took possession" of the Beanie Baby collection is not provided in the record—it could have been an *inter vivos* gift from her mother, she may have taken possession simply to hold the property for the decedent's estate without intending to convert it to her own use, etc. When this matter proceeds to trial, the Trustee will need to produce some evidence showing why the property was taken, that it was taken without permission or without some legal right to do so, that it was taken with the intent to deprive the decedent's estate of the property, and, if the Trustee intends on receiving double damages pursuant to Wyoming law, that the property was taken *after* Winnie's death with improper motive or bad intent. The simple fact that Ms. Whiteman took possession of the collection either before or after Winnie's death is not a sufficient basis, standing alone, to require an offset against her share of Winnie's estate.

11

Court, when the Beanie Baby collection was taken. Therefore, a factual issue remains that precludes summary judgment.

### 2. The checks written on decedent's checking account

The same problem exists with the Trustee's claims regarding the checks Ms. Whiteman admittedly wrote to Chad Pearson, Casper Hardware, and Walden's Books. Again, the admissions on file only state that the checks were written "[b]efore or after the death of Winnie Pearson." There is nothing in the record that dictates a finding that the checks were written after Winnie's death. Copies of the checks were attached as exhibits to the summary judgment motion, and the dates on the checks indicate that they were written either on the date Winnie died, or prior to her death, although they were admittedly endorsed by the various payees following her death. It is simply impossible for the Court to determine, based on the record currently before it, that the checks were actually written following the death.[26]

### 3. The computer and related equipment purchase

The computer purchase presents a different factual scenario than either the checks or the Beanie Baby collection. Ms. Whiteman has admitted that she used the decedent's credit cards to purchase the computer and some ancillary equipment for her own use approximately four days after the death. This finding alone, however, does not result in an award of double damages under Wyoming law. As noted above, § 2-7-411 requires more than simply the taking of estate property following the decedent's death; it also requires the additional showing of a wrong motive or bad

---

[26] Like the analysis of the Beanie Baby collection, if the checks were written prior to the date of death, it is also impossible for the Court to determine, at this time and with the record before it, that the taking of that property was improper.

12

faith.[27] There is simply nothing in the record that establishes, or even implies, that Ms. Whiteman had the requisite mental state to support a claim under § 2-7-411.[28] The Trustee may be able, at trial, to ultimately establish that Ms. Whiteman had the requisite mental state required to assess double damages, but at this point, the Court cannot make such a finding as a matter of law.

### 4. The automobile loan

The Trustee's final claim involves the loan Winnie made to Ms. Whiteman for the purchase of a vehicle for Ms. Whiteman's minor son, Chad Pearson. Ms. Whiteman is deemed to have admitted that she in fact borrowed $5,500 on or about August 12, 1994 to purchase the car.[29] The request for admissions also authenticate three receipts for payments on this loan by Chad Pearson, which reflect a $5,100 balance owing after the last payment. However, the Trustee has not pointed to anything in the record to show that this debt, which was already at least six years old at the time of Winnie's death, was still due and owing. Moreover, at $350 per month payments, the loan should theoretically have been paid in full within two years of the loan, or almost four full years before the death. There is no evidence in the record that the loan was not paid, or that Winnie had ever made a demand for payment in the four years prior to her death.

---

[27] *Delfelder v. Poston*, 293 P. at 361.

[28] For example, Winnie may have authorized her daughter, Ms. Whiteman, with whom she was apparently living at the time of her death, to purchase the property prior to her death and Ms. Whiteman incorrectly, but honestly, believed that she was doing nothing wrong in completing the authorized purchase. In such a case, although Ms. Whiteman might be required to repay the estate for the amount of the purchase price, she might not be required to pay double damages. It is not the Court's intent to make arguments on behalf of Ms. Whiteman in an effort to save her from her failure to respond to the motion for summary judgment, and had the Trustee been able to point to *any* evidence to support her position, she would have likely prevailed on this motion. However, given the complete lack of evidence on this, and other, critical issues, the Court cannot assume facts in favor of the Trustee when there are other equally plausible explanations available.

[29] The request for admissions only states that the amount of the loan was approximately $5,000. However, the receipts in question show that the when the first payment was made, the balance owing was $5,500. The receipts show payments totaling $350, with a balance due, as of February 1, 1995, of $5,150.00.

13

The only mention of the automobile loan in the Trustee's statement of uncontroverted facts is in connection with the admissions deemed made by Ms. Whiteman following her failure to respond to Defendant Pearson's Request for Admissions. The relevant admission states:

> That the attached copies of Receipt Nos. 01454, 01453, and 01453 (sic), marked Exhibit "B" are evidence of payments made by Chad Pearson on account of a loan obtained by Janice Whiteman for approximately $5,000.00 on or about August 12, 1994, for the purpose of purchasing for Chad Pearson, a minor at the time, an automobile.

Nowhere in that admission does Ms. Whiteman state that any amount of that debt is still outstanding.[30] Again, the decedent could have decided to forgive the debt made to benefit her grandchild, or the debt may have been paid off during the six year period between the time of the last documented payment and the date of death.[31] Because the Trustee has failed to establish that Ms. Whiteman still owes this debt, the Court also cannot grant summary judgment on this claim.

## IV. CONCLUSION

The Court finds that the Trustee's Motion for Summary Judgment as to Defendant, Janice Pearson Whiteman, must be denied. First, the Court finds that because the claims asserted by the Trustee in this motion are not properly plead in the Amended Complaint, they are not properly before the Court and the Court cannot grant relief not sought in that complaint. Second, even if the Court were to entertain these claims at this time, the Trustee has failed to provide the necessary

---

[30] There could theoretically be some other reference to the loan in the record submitted in support of the motion for summary judgment, but the Trustee has not specifically identified that evidence and the Court is not required to sift through the over 95 pages of the record to find such an admission. *See* D. Kan. LBR 7056.1 (stating that all factual allegations must "refer with particularity to those portions of the record upon which the movant relies."). *See also Wood v. City of Topeka, Kan.*, 90 F. Supp. 2d 1173, 1182 n.1 (D. Kan. 2000) (noting that "'Judges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[31] In addition, given the fact the debt (if not otherwise forgiven) was over six years old at the time of the death and no payments had been made in over five years, the debt in question may now be unenforceable under the applicable statute of limitations.

14

evidence to support the claims made in her motion for summary judgment. As such, the motion must be denied on that basis, as well.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Motion for Summary Judgment as to Janice Pearson Whiteman[32] is denied. The Court has set the Final Pretrial Conference for March 27, 2008 at 1:20 p.m. Nothing in this opinion will prevent the Trustee from including the claims contained in her summary judgment motion in the final pretrial order.

# # #

---

[32]Doc. 78.